IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. MICHAEL KATZ, M.D., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 22-625-WCB |
| BEEBE HEALTHCARE ET AL., | § § § | |
| *Defendants*. | § § § | |

**MEMORANDUM OPINION AND ORDER**

On November 27, 2024, the plaintiff, Dr. Michael Katz, filed a motion seeking an order holding Dr. Abraham Scheer in civil contempt of court for failing to sit for a deposition in this case. Dkt. No. 74. The plaintiff's motion also requested that the court order Dr. Scheer to pay the plaintiff's attorneys' fees and costs incurred as a result of the motion and to sit for a deposition on December 5, 2024. Dr. Scheer filed a response to the plaintiff's motion, which the court construes as a motion to quash. Dkt. No. 81. After further submissions from the parties and Dr. Scheer, *see* Dkt. Nos. 77, 79, 81, and 84, I held a hearing on the motions on December 13, 2024.

**I.     Background**

The following facts are drawn from the written materials submitted to me by the plaintiff and Dr. Scheer, responses by the participants to questions during the December 13 hearing, and case records.

1. Both Dr. Katz in this case and Dr. Scheer in a separate case before Judge Connolly, *Scheer v. Beebe Healthcare*, No. 21-cv-1565-CFC, have sued Beebe Healthcare and various individuals affiliated with Beebe Healthcare, alleging discriminatory termination. Both Dr. Katz and Dr. Scheer separately retained the Derek Smith Law Group, PLLC, as their attorneys to

1

prosecute the two actions. The law firm assigned Seth D. Carson, then one of the firm's attorneys, to handle both cases.

Things did not go smoothly in either case. In Dr. Katz's case, which was filed in May 2022, plaintiff's counsel failed for nearly two years to comply with his discovery responsibilities. In March 2024, the defendants sought dismissal of the action as a sanction for plaintiff's multiple failures to comply with discovery obligations. *See* Dkt. No. 44. After providing an opportunity for briefing, I entered an order on April 30, 2024, denying the motion to dismiss the action but imposing monetary sanctions against Mr. Carson and the Derek Smith Law Group. Dkt. No. 57.

In the order, I characterized the plaintiff's failure to make discovery in the case as "flagrant." *Id.* at 1. The many failings to comply with discovery obligations are summarized in that order, *id.* at 2–4, and need not be repeated here. As of that time, very little progress had been made in the case. Although the original scheduling order contemplated that discovery would be completed by July 18, 2023, and a trial would be held in April 2024, *see* Dkt. No. 32, multiple extensions were applied for and granted, *see* Dkt. Nos. 34, 36, 40 (defendants noting that as of February 23, 2024, the plaintiff had not provided the defendants with any discovery materials aside from the initial disclosures).

On March 14, 2024, Ms. Catherine Lowry, an attorney with the Derek Smith Law Group, advised defendants' counsel that Mr. Carson was no longer employed by the firm and that she would be representing the plaintiff on behalf of the Derek Smith Law Group. Dkt. No. 55-3 at 17–18. While progress was made on discovery thereafter, several more extensions of the scheduled deadlines were sought. *See* Dkt. Nos. 58, 64, 69, 71. All but the last were granted in whole or in part. *See* Dkt. Nos. 60, 65, 70, 73.

2. In Dr. Scheer's case, No. 21-1565, multiple extensions of time for discovery were sought as well, *see* No. 21-1565, Dkt. Nos. 21, 23, 27. The defendants filed a summary judgment motion in that case on February 8, 2024. No. 21-1565, Dkt. No. 33. In mid-March, after Mr. Carson's employment with the Derek Smith Law Group was terminated, Dr. Scheer elected not to continue with the Derek Smith Law Group as his counsel, and he also requested that Delaware counsel, Ronald G. Poliquin, withdraw as counsel in the case. *See* No. 21-1565, Dkt. No. 38 at 1. Mr. Poliquin subsequently filed a motion to withdraw, which was granted. *See* No. 21-1565, Dkt. No. 44. Dr. Scheer has continued to prosecute his case on a *pro se* basis.

Dr. Scheer states that the Derek Smith Law Firm has not returned his "full file," the contents of which include confidential communications, despite his repeated requests. Dkt. No. 81 at 4.[1] He has expressed concern that those materials are being used by Ms. Lowry in her representation of Dr. Katz in this case. *Id.*

3. In October 2024, Ms. Lowry began attempting to obtain a deposition from Dr. Scheer by issuing subpoenas directing him to appear for a deposition in Dr. Katz's case. Dkt. No. 74-1 at 1; *see also* Dkt. No. 77. According to Ms. Lowry, several attempts were made to serve Dr. Scheer at what Ms. Lowry believed to be his full-time residence. Those efforts were unsuccessful, as the

---

[1] On July 18, 2024, Dr. Scheer filed a motion in his case, No. 21-1565, to require the Derek Smith Law Group to provide him with a complete copy of his file. No. 21-1565, Dkt. No. 46. On August 2, 2024, the law firm responded that they had provided Dr. Scheer with a complete copy of his file via electronic means and had sent him a paper copy of his complete file by FedEx, and thereafter offered to investigate the matter if Dr. Scheer could identify particular items that he believed were missing. The law firm asserted that it had received no response to that offer. No. 21-1565, Dkt. No. 48. On August 5, 2024, Dr. Scheer filed a reply, denominated a "motion for request of file," stating that in April 2024, he had received a box from the law firm with a group of documents that Dr. Scheer had provided to Mr. Carson, but that the documents was not "the full collection of documents that I had provided to my previous attorney, Seth Carson." No. 21-1565, Dkt. No. 49 at 2. He added that he had received an electronic file from the law firm "that was disorganized and missing large gaps of documentation and information." *Id.* at 3. On September 17, 2024, Judge Connolly denied the motion or motions regarding the files. No. 21-1565, Dkt. No. 50 at 2.

process server reported that Dr. Scheer was not present at that address when the efforts to serve him personally were made. Dkt. No. 74-1 at 1–2; *see also* Dkt. No 77 at 4. Another effort was made to serve Dr. Scheer at a different address, but that address turned out not to be a residence. Dkt. No. 74-1 at 2; *see also* Dkt. Nos. 77-2, 77-3.

Ms. Lowry then directed the process server to attempt to serve Dr. Scheer at Bayhealth Hospital's Kent Campus in Dover, Delaware, where Dr. Scheer is employed. Dkt. No. 74-1 at 2. That subpoena was for Dr. Scheer to appear at a deposition on November 26, 2024. *See* Dkt. No. 77-4 at 1.

At that point, the accounts provided by Ms. Lowry and Dr. Scheer diverge. Ms. Lowry asserts that "[o]n November 13, 2024, the subpoena for the November 26, 2024, deposition was served upon the Administrator of Bayhealth Hospital [as] the 'Agent of [sic: or] Person in Charge of' Dr. Scheer's place of employment." Dkt. No. 74-1 at 2; *see also* Dkt. No. 77-6 at 2 (affidavit of service stating that Samantha Irvin, referred to as the "Administrator," was served with the subpoena for Dr. Scheer). Dr. Scheer, however, contends that Ms. Irvin "stated she was <u>never</u> served and has <u>no knowledge</u> of the subpoena . . . [and] that service of process would customarily be through the legal department paralegal, <u>not her</u>." Dkt. No. 81 at 5 (emphasis in original).

There is also a dispute regarding the contacts between Dr. Scheer and Ms. Lowry following the events of November 13. Ms. Lowry asserts that on November 19, 2024, she emailed Dr. Scheer "and offered 'to discuss a virtual deposition and/or obtaining the necessary information through an affidavit.'" Dkt. No. 74-1 at 2, quoting Dkt. No. 77-7. According to Ms. Lowry, Dr. Scheer left a voicemail for Derek Smith, another attorney at the law firm, on November 20, and she returned the call the same day to make arrangements for the deposition on November 26. Dkt. No. 74-1 at 2; *see also* Dkt. No. 74-2 (Ms. Lowry's affidavit). Ms. Lowry states that during the call

4

Dr. Scheer said that he would not be attending the November 26 deposition, to which she replied that he had been lawfully served with a subpoena and that she would seek relief from the court if he failed to attend. Dkt. No. 74-2 at 2. On November 25, according to Ms. Lowry, she spoke again with Dr. Scheer, and Dr. Scheer agreed to appear and requested the link for the virtual deposition. *Id.* at 2. She forwarded the link to him at 6:47 that evening. Dkt. No. 77-9.

Dr. Scheer's version of the events between November 19 and November 25 is different. He states that he made multiple efforts to contact the Derek Smith Law Group beginning on November 20. *See* Dkt. No. 81 at 5–6. A record was preserved of the voicemail that Dr. Scheer left for Mr. Smith on November 20:

> Hello, Derek. Hello Derek Smith. This is Dr. Scheer. My phone number is [redacted]. That's [redacted]. If you'd be so kind to call me back, I'd really appreciate it. Thank you very much. Have a great day. Looking forward to you soon, have a good one. Bye, bye.

Dkt. No. 77-8 at 2.

In his written submission to the court, Dr. Scheer makes no allusion to the conversation that Ms. Lowry asserts she had with him later on the day that he left the voicemail for Mr. Smith. Rather, he states that he left messages with the law firm on multiple occasions on November 21, November 22, and November 23. *See* Dkt. No. 81 at 5–6. On November 23, he asserts,

> I finally spoke to an office individual who answered the phone when I rang. I was told that Attorney Derek Smith is available; after waiting on hold for several minutes, I was told that Mr. Smith is in his office but is unavailable. I requested to be connected to his voicemail; at which time I was told "his voicemail is full." After sixteen phone calls and multiple messages, I finally understood that the Derek Smith Law Firm does not want to speak with me.

*Id.*

At 8:40 p.m. on November 25, the evening before the scheduled deposition, Dr. Scheer responded to Ms. Lowry's 6:47 p.m. email that contained the link to the virtual deposition. *See* Dkt. No. 77-9 at 2. Dr. Scheer's email stated:

> In receiving your phone call this evening, I was stunned to learn I had been scheduled for a deposition tomorrow, Tuesday, Nov 26, 2025, at 9:00AM. If I had any kind of notice for this deposition prior to speaking with you this evening at 7:07PM, I would have told you I am on Neurology Hospital Call Service and Emergency Stroke Call tomorrow, and would never have consented to this deposition in an effort to prevent the waste of valuable resources. Please contact me with any questions or concerns, as I will not be able to attend the deposition you first informed me about this evening.

*Id*. Thus, according to Dr. Scheer's email, Ms. Lowry sent him the link to the deposition before speaking to him on the phone about the deposition.

At 9:00 a.m. on November 26, counsel for the plaintiff, counsel for the defendants, and the court reporter joined the deposition, as did Dr. Scheer, who was in a hospital emergency room. At the outset of the deposition, Dr Scheer asked to be permitted to make a statement. He then stated the following:

> So I know we spoke last night and I tried to explain to you that I was never served, and under oath, I'm going to swear again. I was never served. I never knew about this deposition until last night at 7:00.
> I did attempt to be able to clear my calendar and attend this deposition without any interruption, but I was unable to do that. I'm currently in the emergency room. I have several emergencies I'm dealing with. I have several consults. I have one, two, three hospitals I want to service for. I have a population of 100,000 people that I'm currently taking care of.
> I'm not sure how long we're going to be able to continue in this deposition, but I'm going to be cooperative, but again, for the record, I was never served. I tried to contact your office several times, at least 10 times to speak with Attorney Smith about this deposition, about moving forward.
> I know I've had depositions before with Attorney Swerdlin. I've always cooperated with the depositions. I'm doing everything I can to cooperate. I'm not sure how long this is going to be able to [inaudible], but we can continue. I have several emergencies I'm dealing with right now. So if I have to go, please contact me another time and work this out. I did not know about this deposition until 7:07 last night when you told me about it.

> So I'm doing the best I can to be cooperative and I hope I can get the same cooperation from you. I tried to cancel the deposition, but you have insisted that this goes on.
> Since you insisted this goes on, and since I was never served, and since I could not get in contact with Derek Smith from your office, I don't believe this is on me. I feel bad that court reporter is there, Attorney Swerdlin is there, that you are here. I feel very bad about that. I'm not going to apologize because this is not on me. If you'd like to continue asking me questions, let's go ahead and not stop[].

Dkt. No. 77-10 at 7–9.

After some preliminary questions, plaintiff's counsel asked Dr. Scheer if there was any reason he would be unable to understand and answer questions. He responded "yes," and explained as follows:

> As I said to you before, I'm taking care of three major medical centers. I'm taking care of one, two, three emergency rooms, I have to consult today.
> I'm late at this point and I'm under a lot of stress right now, but I'm doing everything I can to cooperate. I tried to explain this to you yesterday . . . .
> Obviously, I keep saying the same thing to you and I don't think you are understanding what my obligation is today and what I need to do today, but I'm going to do my best to be cooperative.

*Id.* at 10–11.

After a few more questions, Dr. Scheer stated that he was being paged. *Id*. at 12. The following exchange ensued:

> The Witness: I need to go. Do you want to wait for me to get back? What do you want to do?
> Mrs. Lowry: Doctor, that's up to you. We are not canceling the deposition. You can put this on the record. You were officially served. I have proof of service. This should take about an hour without interruption, or I can seek relief of the court.
> . . .
> Do you know approximately how long it will be until you're able to rejoin us?
> The Witness: I can probably shoot for half an hour.
> Mrs. Lowry: Okay. We will take a half an hour break, and we will reconvene.
> . . .
> The Witness: Let me be quite frank with you. I don't think this is a good idea, so I need everyone to cooperate here and understand the situation.
> Mrs. Lowry: Dr. Scheer, I understand, but you were subpoenaed.

7

>The Witness:  Let me just finish.
>Mrs. Lowry:  No, Dr Scheer, we will reconvene.  We can reconvene at 9:50.
>The Witness:  Don't interrupt me.  I'm speaking right now, and I'm not going to interrupt you.  I think we need to have rules of the deposition, right?  So can I ask you please to respect that I'm not going to interrupt you, and you're not going to interrupt me?  Let's just respect that.
>Mrs. Lowry:  Dr. Scheer we will reconvene at 9:50.

*Id.* at 12–14.

The back-and-forth between Ms. Lowry and Dr. Scheer continued in the same vein for some period, with Dr. Scheer stating that he was being paged again and that he had just received a "stroke alert." *See id*. at 18.  Ms. Lowry repeated that the deposition would reconvene at 9:50 and that "[i]f you fail to appear, I will take it up with the judge." *Id*. at 19.  A recess was then taken at 9:23 a.m. *Id.* at 21.

At 10:47 am, when Dr. Scheer had still not returned, Ms. Lowry concluded the deposition. *See id*. at 21–22.  A few minutes later, at 11:01 that morning, Dr. Scheer sent an email to the participants in the deposition, stating:  "Unfortunately, after explaining my situation to you multiple times, I will be unable to complete the deposition.  Please contact me at your convenience."  Dkt. No. 77-11 at 2.

The following day, plaintiff's counsel filed the motion for contempt and sanctions, asking that Dr. Scheer be held in contempt pursuant to Rule 45 of the Federal Rules of Civil Procedure "for his failure to sit for the deposition on November 26, 2024, for which he was properly served."  Dkt. No 74-1 at 1.

While Ms. Lowry's account of the events leading to the present dispute differs in some respects from Dr. Scheer's, the differences are not material to the resolution of the present motion.  The critical point on which there is no dispute is that the subpoena in question was served, if at all, on the hospital administrator, and not on Dr. Scheer personally.

## II. Discussion

1. Plaintiff argues that Dr. Scheer was validly served with a subpoena to appear for the deposition and that he should be held in civil contempt for failing to complete the deposition. Dr. Scheer's position is that he was not validly served and therefore was not required to be present or to participate in the deposition in the manner demanded by plaintiff's counsel. Dr. Scheer argues in effect that because of the failure to serve him properly, he was present at the deposition voluntarily, not under legal compulsion, and was therefore free to tend to medical needs at the emergency room when they arose rather than continuing the deposition without interruption.

As Judge Latchum stated half a century ago, "[i]t is a proper defense to a petition for a contempt order for failing to obey a subpoena to establish that the requirements of Rule 45 which govern the validity of a subpoena were not met." *In re Johnson & Johnson*, 59 F.R.D. 174, 177 (D. Del. 1973); *see also CMI Roadbuilding, Inc. v. Dritto Techs., Inc.*, No. 20-2911 , 2020 WL 5571743, at *2 (D.N.J. Sept. 17, 2020) ("The Court's ability to force compliance with a subpoena is limited by Rule 45(b)(1)."); *Farley-Skinner v. Adventure Aquarium, LLC*, No. 1:17-cv-4797, 2018 WL 3647209, at *1 (D.N.J. Aug. 1, 2018) ("[A] party cannot be held in civil contempt or subjected to sanctions if an issued subpoena was improperly served."); *Alfamodes Logistics Ltd. Liab. Co. v. Catalent Pharma Sols., LLC*, No. 09-3543, 2011 WL 1542670, at *1 (E.D. Pa. Apr. 25, 2011) (denying a petition for contempt because of failure to demonstrate "properly serving a subpoena on a nonparty to the litigation"); *see generally* Fed. R. Civ. P. 45(g) (court "may hold in contempt a person who, *having been served*, fails without adequate excuse to obey the subpoena") (emphasis added).

While the waste of time for all concerned was unfortunate, Dr. Scheer is correct that if he was not properly served, he was not required to be present for the deposition, and plaintiff could

9

not insist that he retreat to a private area or remain present for the entire deposition without interruptions when his medical duties required his presence elsewhere. Dr. Scheer advised plaintiff's counsel that he would be subject to being summoned for emergencies, which is what occurred. The question thus comes down to whether Dr. Scheer was under compulsion to appear (and remain) for the duration of the deposition. That question turns on whether he was validly served with a subpoena to appear for the deposition on November 26.

He was not. Rule 45(b)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows: "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." That language has long been interpreted to require personal service of the subpoena. *See* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2454 (3d. ed. 2024) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.") (citing numerous cases from appellate and district courts in various circuits). While there are some cases in other jurisdictions holding that the rule permits service of a subpoena by other means in limited circumstances,[2] that is the minority position among federal courts. Most courts have held that personal service is required, including most cases from district courts within the Third Circuit.

---

[2] *See, e.g., High Tech Nat'l, LLC v. Stead*, Misc. No. 19-181, 2020 WL 3605286, at *3 (E.D. Pa. July 2, 2020); *Yelland v. Abington Heights Sch. Dist.*, No. 3:16-cv-2080, 2017 WL 4122465, at *4 (M.D. Pa. Sept 18, 2017); *Jorden v. Glass*, No. 09-1715, 2010 WL 3023347, at *1 n.1 (D.N.J. July 23, 2010); *N.J. Building Laborers Statewide Benefit Funds & Trs. Thereof v. Torchio Brothers, Inc.*, No. 08-552, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009). Most of the cases following that minority rule involve service attempted by certified mail, *see, e.g.*, *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012), or other unusual circumstances not present here. *See, e.g., Castillo v. Shippensburg Urban Developers, Inc.*, No. 1:19-cv-2236, 2021 WL 12313250, at *1 (M.D. Pa. Nov. 24, 2021) (allowing service by certified mail in a case in which there was evidence that the subpoenaed party had previously intentionally avoided service and had not responded to the government's motion to permit alternative service, despite a court directive to do so).

The Third Circuit has not spoken to this issue, but all the relevant decisions from courts in the District of Delaware have held that personal service is required. *See Kabbaj v. Simpson*, No. 12-1322, 2013 WL 867751, at *4 (D. Del. Mar. 7, 2013) ("Rule 45 requires personal service.") (cleaned up); *Duffy v. Kent Cnty. Levy Ct.,* 800 F. Supp. 2d 624, 629 (D. Del. 2011) ("A majority of courts have held that Rule 45 requires personal service of subpoenas."); *Ricoh Co. v. Oki Data Corp.*, No. 09-694, 2011 WL 3563142, at *4 (D. Del. Aug. 15, 2011) ("[T]he proper method of service is personal service."); *Ace Hardware Corp. v. Celebration Ace Hardware, LLC*, No. 09-cv-66, 2009 WL 3242561, at *1 n.3 (D. Del. Oct. 8, 2009) ("Rule 45 requires personal service."); *In re Johnson & Johnson*, 59 F.R.D. at 177 ("[P]ersonal service of a subpoena is required when an individual is subpoenaed.").

Most decisions from other district courts within the Third Circuit have likewise required personal service to satisfy Rule 45(b)(1). *See, e.g.*, *Dally v. Restore Integrative Wellness, LLC*, No. 23-4035, 2024 WL 5057195, at *1 (E.D. Pa. Dec. 10, 2024) ("[T]he longstanding interpretation of Rule 45 has been that personal service is required.") (cleaned up); *Manivannan v. U.S. Dep't of Energy*, No. 18-297, 2023 WL 7132129, at *3–4 (W.D. Pa. Oct. 30, 2023); *Hamilton v. Radnor Twp.*, 662 F. Supp. 3d 536, 541 (E.D. Pa. 2023); S*mith v. Club Exploria LLC*, No. 3:20-CV-580, 2021 WL 4375907, at *2–3 (M.D. Pa. Sept. 24, 2021) ("The majority view [is] that personal service of subpoenas is required."); *Vogt v. Wetzel*, No.17-1407, 2022 WL 686225, at *3 ("Rule 45 is generally construed to require personal service."); *Farley-Skinner*, 2018 WL 3647209, at *2 ("[C]ourts within the Third Circuit have interpreted the word 'delivering' in Fed. R. Civ. P. 45(b)(1) literally, requiring that an individual is served personally."); *Trs. of the Int'l Union of Operating Eng'rs Local 825 Emp. Benefit Funds v. J.T. Cleary, Inc.*, No. 17-5962, 2018 WL 1972790, at *2 (D.N.J. Apr. 26, 2018) ("Because Petitioners have failed to comply with the

11

personal service requirement of Rule 45(b)(1), the Court declines to hold Mr. Cleary (a nonparty) in contempt for failing to submit to such discovery at this time."); *Alfamodes Logistics*, 2011 WL 1542670, at *1 ("[P]ersonal service of subpoenas is required. The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed *literally*.") (cleaned up); *In re Craig B. Rosen*, 542 B.R. 177, 180 (Bankr. E.D. Pa. 2015) (holding that "actual notice of the Subpoena does not obviate the requirement of proper service"); *Leboon v. Alan McIlvain Co.*, No. 12-2574, 2014 WL 11429343, at *1 (E.D. Pa. Mar. 14, 2014) ("Under Fed. R. Civ. P. 45, personal service of subpoenas is required."); *Bd. of Sapphire Bay Condominiums West v. Simpson*, No. 04-62, 2010 WL 2521088, at *1–2 (D.V.I. June 18, 2010); *see generally Chima v. U.S. Dep't of Defense*, 23 F. App'x 721, 724 (9th Cir. 2001) ("Chima served these subpoenas by mail rather than by personal service as required by F.R.C.P. 45(b)(1). . . . We agree that Chima probably served the subpoenas improperly."); *FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312–13 (D.C. Cir. 1980) ("By contrast [to Rule 4], Rule 45(c) [now Rule 45(b)(1)] does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwellingplace. Thus, under the Federal Rules, compulsory process may be served upon an unwilling witness only in person.").

In cases with facts particularly pertinent to the facts of this case, courts have held that delivering a subpoena to a person who might be expected to deliver it to the witness, such as the witness's wife, lawyer, or employer, is inadequate to satisfy the personal service required by Rule 45(b)(1). *See Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (lawyer); *McMillan v. Comm'r of the N.J. Dep't of Corrections*, No. 18cv13379, 2023 WL 6121319, at *2, 5 (D.N.J. Sept. 19, 2023) (wife and executive assistant); *Leboon*, 2014 WL 11429343, at *1 (employer); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 304 (S.D.N.Y.

2009) ("Unlike service of most litigation papers, service [of a Rule 45 subpoena] on an individual's lawyer will not suffice."); *Trujillo v. Bd. of Educ.*, No. 02-1146, 2007 WL 5231707, at *1-2 (D.N.M. Aug. 23, 2007) (employer); *Fiorentino v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2012 WL 12861600, at *1–2 (M.D. Pa. Jan. 6, 2012) (spouse and employer); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 37–38 (D.D.C. 2004) (support staff); *Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) (wife). Consistent with those decisions, the presentation of the subpoena in this case to the administrator of the hospital at which Dr. Scheer was employed does not constitute "delivering a copy to the named person" within the meaning of Rule 45(b)(1).[3]

In this case, Dr. Scheer was never personally served with a subpoena to appear for a deposition on November 26 (or any other date), and there was no evidence that the subpoena was actually delivered to him prior to that date. Therefore, he was under no obligation to appear for the virtual deposition at that time or to submit to counsel's terms for conducting the deposition. For that reason, he was free to take breaks during the deposition to deal with medical emergencies, which he did. There is thus no basis on which the court may sanction him for his conduct on the morning of November 26.

---

[3] Reasonable arguments can be made in favor of the minority position regarding Rule 45(b)(1), *i.e.*, that "delivering a copy" of the subpoena should not be interpreted as requiring in-hand personal service. *See Ott*, 682 F.3d at 587; *Bank of Oklahoma, N.A. v. Arnold*, No. 06-CV-543, 2008 WL 482860 (N.D. Okla. Feb. 20, 2008); *Hall v. Sullivan*, 229 F.R.D. 501–06 (D. Md. 2005); 9 James Wm. Moore, Moore's Federal Practice § 45.21 at 45-44 (2024). Even courts that have adopted the minority position, however, have generally required evidence that the witness received the subpoena or at least had notice of it. In this case, the evidence does not show that Dr. Scheer ever received the subpoena that was presented to the hospital administrator, and even though he was aware that he had been subpoenaed to testify on November 26 at some point between November 19 and November 25, the evidence did not show that he received the minimum of 10 days' advance notice required by Local Rule 30.1 of the Local Rules of the District of Delaware.

2. A second, and more difficult, question is whether plaintiff's counsel can properly depose Dr. Scheer at all, and if so, what limits should apply to counsel's questioning.

As noted above, Dr. Scheer still has some disputes with the Derek Smith Law Group relating to their former relationship. In particular, he contends that the Derek Smith Law Group has not returned some of the materials that he provided to them while he was being represented by Mr. Carson. And Dr. Scheer objects to the fact that the Derek Smith firm, which previously represented him, is now seeking to depose him in a case "involving the same defendants" as his own case. *See* Dkt. No. 81 at 7. Dr. Scheer asserts that "Attorney Lowry Smith continues to violate [his] attorney client privilege by utilizing confidential information and materials the Derek Smith Firm obtained when representing [him]." *Id*.

Dr. Scheer's objection raises an ethical issue regarding Ms. Lowry's proposal to depose him. It is well settled in Delaware and Pennsylvania (where Ms. Lowry practices and is licensed to practice, *see* Dkt. No. 46) that an attorney may not disclose a former client's confidential or privileged information and that the attorney may not use that information in later litigation in a manner that could harm the former client's interests. *See* Delaware Lawyers' Rules of Professional Conduct, Rule 1.9(c); Pennsylvania Rules of Professional Conduct, Rule 1.9(c).

In this case, I will forbid Ms. Lowry from disclosing information she (or the Derek Smith Law Group) has obtained in confidence from Dr. Scheer. However, even in the absence of any actual disclosure of such information, it seems possible that Ms. Lowry in the course of the deposition might make use of confidential information the Derek Smith Law Group has obtained from Dr. Scheer. The question then becomes whether her use of that information is likely to disadvantage Dr. Scheer. *See* Delaware Lawyers' Rules of Professional Conduct, Rule 1.9(c)(1) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has

14

formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known[.]"); Pennsylvania Rules of Professional Conduct 1.9(c)(1) (same).

Importantly, although it is apparent from the record materials that Dr. Scheer and Ms. Lowry have an uncomfortable relationship, Dr. Scheer and Dr. Katz do not appear to be adversaries in their respective cases against Beebe Healthcare. Their claims against the common defendants are quite similar, and it seems likely that Ms. Lowry is simply seeking to elicit and preserve testimony from Dr. Scheer regarding his own complaints against Beebe Healthcare and his knowledge of events relating to Dr. Katz's case, to the extent that testimony could be helpful to Dr. Katz. If that is the case, it is difficult to see how the incidental use of any of Dr. Scheer's confidential information would result in an ethical violation by Ms. Lowry under the Delaware or Pennsylvania Rules of Professional Conduct (which are identical on this point).

At the hearing on December 13, 2024, Ms. Lowry outlined the subject matter of the questioning that she intended to direct to Dr. Scheer during the deposition. Based on her description of the areas she proposed to explore, I think it unlikely that Ms. Lowry's questioning will disadvantage Dr. Scheer in any respect. For that reason, I will not prohibit the deposition from going forward. Nonetheless, in light of the awkward situation in which the parties and plaintiff's counsel find themselves, I expect Ms. Lowry to proceed cautiously, with the rules of professional responsibility clearly in mind.

Although Dr. Scheer has expressed reservations about being deposed by a member of the firm that previously represented him, he has indicated his willingness to proceed with a deposition if he is given sufficient notice and an opportunity to arrange a time that will not conflict with his

medical responsibilities. He is free to insist on a lawful subpoena as a precondition of his appearance, but he may wish to waive that right if he is permitted to select a time for the deposition that will be convenient for him. He is also free to waive the provision in the Local Rules of the District of Delaware giving a witness the right to at least 10 days' advance notice for a deposition. *See* Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, Rule 30.1.

The deposition will likely be short: Ms. Lowry predicted that her questioning will require only about an hour to three hours, at most. For that reason, scheduling the deposition promptly should not be particularly difficult and sitting for the deposition should not impose an undue burden on Dr. Scheer. With the guidance provided above, I expect the parties to proceed without the need for further court intervention.

IT IS SO ORDERED.

SIGNED this 16th day of December, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE